Erin Rose Ronstadt, SBN 028362
Kevin Koelbel, SBN 016599
OBER & PEKAS, PLLC
3030 N. 3rd Street, Suite 1230
Phoenix AZ 85012
Phone: (602) 277-1745
Fax: (602) 761-4443
erin@oberpekas.com
kevin@oberpekas.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kristofer Young, a single man,<br><br>                                    Plaintiff,<br>v.<br><br>Banner Health Master Health and Welfare Benefits Plan, an ERISA benefit plan; Life Insurance Company of North America, a plan fiduciary; Health and Welfare Plan Committee, a plan administrator; and Banner Health, a plan fiduciary,<br>                                    Defendants. | No.<br><br>**COMPLAINT** |

For his claims against Defendants Banner Health Master Health and Welfare Benefits Plan (the "Plan"), Life Insurance Company of North America ("LINA"), Health and Welfare Plan Committee (the "Committee"), and Banner Health ("Banner Health") (collectively "Defendants"), Plaintiff Kristofer Young ("Mr. Young" or "Plaintiff") alleges as follows:

*Jurisdiction, Venue And Parties*

1.    This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

2.    Mr. Young was a participant and beneficiary of the Plan as an employee of Banner.

3.    Mr. Young is a single man, currently residing in Maricopa County, Arizona and has been a resident of Maricopa County at all times since becoming a Plan participant.

4.    The Plan, Committee, and Banner Health have their principal place of business in the state of Arizona.

5. LINA has its principal place of business in the state of Pennsylvania.

6. Defendants are licensed and authorized to do business in Maricopa County, Arizona, and reside and are found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

7. This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

8. Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

9. The Plan is a purported ERISA benefit plan established and maintained by Banner Health for the benefit of its employees.

10. Banner Health is the Plan Sponsor of the Plan.

11. Banner Health, through its Board of Directors, is a fiduciary under the Plan.

12. Banner Health fully insures long-term disability ("LTD") benefits under the Plan with a Policy, Numbers LK980211 and RBO 030036 (the "LTD Policy").

13. Banner Health's Board of Directors delegated its fiduciary responsibilities as Plan Sponsor to Banner's Chief Executive Officer ("CEO").

14. The Board of Directors is responsible for reviewing and monitoring the CEO's performance with respect to the duties delegated to the CEO and for taking any prudent or appropriate corrective actions with respect to performance of those duties.

15. The CEO has the authority to appoint members of the Committee to administer the Plan, review and evaluate the Committee's performance, and take any prudent or appropriate corrective action with respect to the Committee's performance.

16. The Committee is the Plan Administrator.

17. The Committee has the discretion to interpret the provisions of the Plan.

18. The Committee is responsible for the Plan design of all the benefits offered under the Plan, all related administrative functions, and compliance with rules and regulations.

19. The Committee may delegate responsibilities to Banner Plan Administration ("BPA") and to: the Vice President – Total Compensation; or Vice President – Benefits (collectively, the "Vice Presidents").

20. BPA is responsible for considering all claims and appeals, complying with reporting and disclosure requirements, ensuring that the Plan's administration complies with the Plan document and applicable laws, and appointing or employing vendors to assist in the administration of the Plan.

21. The Vice Presidents are responsible for the design of all benefits offered under the Plan, coordinating the contracting with all vendors for all benefits under the Plan, coordinating the written Plan document and Summary Plan Description ("SPD") with the adopted Plan design, appointing or employing vendors to assist in the administration of the Plan, and approving Plan amendments.

22. Under the Plan, "[t]he Plan Administrator has the discretion to interpret the provisions of the Plan. The decision of the Plan Administrator is final and binding."

23. The Plan does not provide a mechanism for the Plan Administrator to delegate its discretionary authority.

24. The Plan does not provide for BPA or the Vice Presidents to delegate their duties.

25. The Plan does not provide a mechanism for delegation of discretionary authority to LINA.

26. The LTD Policy's grant of discretionary authority to LINA was not valid and cannot supersede the terms of the Plan.

27. Banner Health reserves the right to amend, modify, or terminate the Plan by means of a properly adopted amendment executed by the CEO or Vice Presidents.

28. An undated Amendatory Rider by LINA represents that the "Plan Administrator" appointed LINA as the named fiduciary for deciding claims and benefits and deciding appeals, but does not purport to delegate discretionary authority.

-3-

29. An undated Employee Welfare Benefit Plan Appointment of Claim Fiduciary contract (the "Contract") purportedly designated LINA as a "Claim Fiduciary."

30. The Contract notes that LINA is responsible for adjudicating claims for benefits under the Plan and deciding any appeals of adverse claim determinations.

31. The Contract improperly delegates LINA "the authority, in its discretion, to interpret the terms of the Plan," and "final and binding" decision authority, which contradicts the Plan.

32. The Contract notes that the Plan Administrator is responsible for furnishing a Summary Plan Description ("SPD") to the Participants with this information.

33. The Contract further notes that the Committee "is solely responsible" for assuring that the SPD is consistent with the terms of the Plan.

34. The Contract "does not authorize to [LINA] any fiduciary responsibility with respect to the administration of the Plan" except as provided in the Contract.

35. The Contract states that LINA's "sole liability to the Plan and to Participants and Beneficiaries shall be for the payment of benefits provided with respect to Policies issued by [LINA] to the Plan."

36. The Contract erroneously identifies the Plan Administrator as Banner Health.

37. Because the Contract contradicts the terms of the Plan, discretionary authority was never properly delegated to LINA.

38. Mr. Young requested from LINA and Banner copies of all Plan Documents including the LTD Plan, the SPD for the LTD Plan, modification or amendments to the LTD Plan, and minutes of any Committee meeting from 2013 to 2014.

39. Banner Health did not produce an LTD Plan or SPD for the LTD Plan. Instead, it produced the LTD Policy, which under ERISA cannot be both the Plan and the SPD.

40. Banner Health did not produce minutes of any meetings.

41. On August 7, 2015 Banner Health denied that the LTD Plan had been modified since September 30, 2014, when it produced the LTD Policy, and refused to produce any LTD plan documents.

42. Banner Health did not provide any document that reflects delegation of discretionary authority by the Committee or BPA in the manner provided in the Plan or that revoked the Committee or BPA's discretionary authority.

43. LINA does not have discretionary authority under the Plan.

44. Banner Health has a duty to administer the Plan prudently and in the best interest of all Plan participants and beneficiaries.

45. LINA acted as an agent to Banner Health and/or the Plan to make final decisions regarding the payment of disability benefits for the Plan and to administer the Plan.

46. At the time Mr. Young sought LTD benefits under the Plan, LINA administered claims for Banner Health under the Plan, acted on behalf of the Plan, and acted as an agent for Banner Health.

47. LINA administered claims under the name CIGNA.

48. LINA should not be entitled to any deference in its decision-making in light of the facts and circumstances of this claim.

49. Mr. Young is entitled to *de novo* review of his claim.

## GENERAL ALLEGATIONS

### *LTD Plan Language*

50. In order to meet the definition of Disability under the LTD Policy, Mr. Young must be "unable to perform the material duties of [his] Regular Occupation; and unable to earn 80% or more of [his] Indexed Earnings from working in [his] Regular Occupation," "solely because of Injury or Sickness."

51. In order to meet the definition of Disability under the LTD Policy after Disability Benefits have been payable for 24 months, Mr. Young must prove that "solely because of Injury of Sickness" he is "unable to perform the material duties of any

-5-

occupation for which [he] is, or may reasonably become, qualified based on education, training, or experience," and "unable to earn 80% or more of [his] Indexed Earnings.

52. The LTD Policy defines "Indexed Earnings" as follows:

> For the first 12 months Monthly Benefits are payable. Indexed Earnings will be equal to Covered Earnings. After 12 Monthly Benefits are payable. Indexed Earnings will be an Employee's Covered Earnings plus an increase applied on each anniversary of the date Monthly Benefits became payable. The amount of each increase will be the lesser of:
>
> 1. 10% of the Employee's Indexed Earnings during the preceding year of Disability; or
>
> 2. the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.

53. The LTD Policy defines "Sickness" as "[a]ny physical or mental illness."

54. The LTD Policy defines "Injury" as "[a]ny accidental loss or bodily harm which results directly and independently of all other causes from an Accident."

55. The LTD Policy does not define "Accident."

56. The LTD Plan defines Regular Occupation as "[t]he occupation [Mr. Young] routinely perform[ed] at the time the Disability begins. In evaluating the Disability, [LINA] will consider the duties of the occupation as it is normally performed in the general labor market in the national economy. It is not work tasks that are performed for a specific employer or at a specific location."

### *Mr. Young's Employment*

57. Banner Health employed Mr. Young as a Security Officer.

58. His last date of full-time, unrestricted work was on April 1, 2013.

59. Mr. Young attempted to return to work on August 27, 2013 with restrictions through Banner Health's Light Duty Work Program; however, he was unsuccessful.

60. The material duties of Security Officer based on Banner Health's job description include the following:

- ➢ Tours and inspects the facilities and grounds frequently to assist in maintaining a safer and more secure environment;
- ➢ Assists with the welfare and safety of personnel and patients;

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

- Investigates and completes written reports of complaints, critical security incidents and unusual activities involving patients, employees, and visitors;
- Interfaces with emergency response agencies;
- Secures doors. Locks and unlocks facility doors at prescribed times. Checks unoccupied areas and sets the alarms when appropriate;
- Performs money pick-ups from departments. Logs pick-ups and successfully delivers the contents to the appropriate destination department;
- Releases bodies from the morgue, ensuring that all paperwork is complete;
- Checks alarms and fire extinguishers to ensure they are in proper working order.
- Escorts patients, visitors and employees;
- Assists medical staff in restraining and handling disturbed patients; and
- Monitors parking and traffic control.

61. The duties in the preceding paragraph are consistent with the O*NET database[1] "Security Guards" (33-9032.00).

62. According to Banner Health's job description, Mr. Young's occupation as a Security Officer required "considerable physical activity." The physical and cognitive demands include:

- Ability to stand, climb, stoop, bend frequently;
- Ability to lift up to 75 pounds;
- Ability to tolerate exposure to conditions which may include toxic chemicals, bio-hazardous materials, dirt, dust, fumes, smoke, heights, high temperatures and/or confined spaces;
- Ability to use proper body mechanics to lift supplies and equipment and push carts and dollies weighing up to 500 lbs;
- Ability to communicate effectively through reading, writing, and speaking in person or on the telephone;
- Ability to write comprehensive security reports; and
- Ability to make accurate observations and exercise good judgment in a variety of situations (including emergencies).

### *Mr. Young's Disability*

---

[1] The Occupational Information Network (O*NET) replaced the Dictionary of Occupational Titles ("DOT") in 1998. The DOT was deemed obsolete and then abandoned by the Employment Service and the Department of Labor.

63. Mr. Young suffers from lumbar spine degenerative disc disease with radiculopathy.

64. Mr. Young suffers from chronic, debilitating back pain secondary to his medical condition.

65. Mr. Young's diagnoses are substantiated by objective evidence, including diagnostic imaging and physical examination findings.

66. Mr. Young experiences cognitive difficulties secondary to his pain and medication side effects.

67. Mr. Young's treating providers have assessed that he cannot work.

68. Mr. Young underwent a Functional Capacity Evaluation ("FCE") on July 9, 2015 by Patrick O'Brien, PT, DPT, COMT.

69. Mr. O'Brien concluded that Mr. Young had restrictions and limitations that would preclude him from his Regular Occupation.

70. Since the FCE, which is outdated, Mr. Young's conditions have further degenerated.

71. Mr. Young's ability to seek more aggressive treatment is stunted by his lack of income and state health insurance restriction, since LINA's termination of his LTD benefits.

### *Mr. Young's LTD Benefits*

72. LINA first denied Mr. Young's LTD benefits on June 10, 2015.

73. Mr. Young appealed the June 10, 2015 adverse benefits decision on August 6, 2015.

74. In the August 6, 2015 Appeal, Mr. Young noted:

➢ LINA had not provided the claim file, despite his request for it.

➢ LINA had not identified the Team Leader, Nurse Case Manager, or Medical Director that reviewed Mr. Young's claim.

➢ LINA misrepresented the medical records, *e.g.,* LINA characterized an office note that stated, "Range of motion limits symmetrically (equal), strength symmetrically (equal), neuro-muscular examination is symmetrically (equal)," as "full range of motion and normal strength and muscle tone."

- LINA cited no diagnostic imaging on file, but Mr. Young had provided it with his Proof of Loss. The MRI showed a degenerative back condition specifically, a diskogenic protrusion, central spinal canal stenosis, and disk protrusion associated with an annual tear.

- LINA faulted Mr. Young for not pursuing additional treatment, despite its knowledge that he had no medical insurance and no income.

- LINA offered unsupported opinions and observations.

- LINA ignored an independent functional capacity examination report that supported a finding of disability.

75. On October 9, 2015, LINA reversed its decision and approved Mr. Young's LTD benefits beginning October 1, 2013, but only through September 24, 2015.

76. On appeal, LINA referred Mr. Young's claim for a Peer Review with Dr. Stuart Rubin.

77. Based on Dr. Rubin's September 28, 2015 report, LINA determined that Mr. Young's claim was medically supported beyond the elimination period and through the majority of the Regular Occupation period.

78. Distorting Dr. Rubin's assessment, LINA closed the claim effective September 24, 2015, one week shy of Mr. Young's transition to the Any Occupation period.

79. Any occupation period would have commenced October 1, 2015.

80. Mr. Young is informed and believes that LINA closed the claim to avoid liability into the Any Occupation period.

81. Dr. Rubin determined that Mr. Young had less than sedentary capacity.

82. As part of his restrictions and limitations, Dr. Rubin posited that Mr. Young had "diminished ability to sit and stand for prolonged periods of time" and could only sit for 30-minute intervals at a time and for no more than 4 hours per day.

83. Dr. Rubin provided further restrictions noting that Mr. Young could only stand/walk 15 minutes at a time and for no more than one (1) hour per day.

84. Dr. Rubin explained that Mr. Young's "ability to function only 5 hours per day [was] based on the concern that should [Mr. Young] surpass the [restrictions and limitations] in quality or quantity, tissue inflammation, irritation, and worsening of the disc

1  protrusion may ensue." Dr. Rubin advised that "[t]his may lead to further lower extremity
2  weakness and diminishment in function."

3      85.    Dr. Rubin provided a six-month provisional duration for the restrictions and
4  limitations from the purported date of the last available record documenting Mr. Young's
5  clinical abnormalities.

6      86.    Dr. Rubin conceded, however, that "since the[] clinical abnormalities ha[d]
7  been ongoing despite injections and medication management," "it [was] reasonable [that]
8  they [would] continue through *at least* September 24, 2015."

9      87.    LINA intentionally distorted this statement to conclude that Mr. Young's
10  Disability was *only* supported through September 24, 2015; to the contrary, Dr. Rubin
11  never concluded that Mr. Young had no restrictions and limitations after that date.

12      88.    If anything, Dr. Rubin suggested that if the medical records continued to
13  show deficits or impairments, the restrictions and limitations would remain.

14      89.    Based on Dr. Rubin's report, Mr. Young continues to have less than
15  sedentary work capacity because his medical condition has not changed or improved.

16      90.    Mr. Young appealed the October 9, 2015 adverse benefits decision on April
17  6, 2016.

18      91.    The October 9, 2015 appeal included updated medical records demonstrating
19  the same ongoing "clinical abnormalities" that Dr. Rubin previously found restricting.

20      92.    As part of LINA's review of the appeal, it employed Medical Consultants
21  Network ("MCN") to conduct a medical file review.

22      93.    On June 20, 2016, Dr. Behzed Emed, through MCN, issued a report based
23  on his review of the medical file.

24      94.    On June 13, 2016 and June 14, 2016, Dr. Emed attempted to have
25  unauthorized communication with Mr. Young's treating provide, Dr. Wade.

26      95.    In his report, Dr. Emed opines that Mr. Young "does not have any
27  impairment that translates into restrictions/limitations from 04/02/2013 and continuing."
28

-10-

96. Dr. Emed's opinion starkly contradicts the assessments of Mr. Young's treating providers, Dr. Rubin, and Mr. O'Brien.

97. Dr. Emed's opinion is contrary to LINA's own assessment of functional capacity, as LINA found restrictions and limitations precluding Mr. Young's ability to work in his Regular Occupation up to September 24, 2015.

98. In part, Dr. Emed based his opinion on his inaccurate assessment that Mr. Young has a normal range of motion; however, Mr. Young's medical evidence objectively identifies reduced range of motion in his lumbar spine during most of his physical examinations.

99. LINA's 90-day deadline (45-days, plus a 45-day extension) to respond to the appeal was July 5, 2016.

100. In an untimely letter dated July 26, 2016, postmarked July 29, 2016, and received on August 1, 2016, LINA upheld its termination of LTD benefits (the "Denial").

101. The Denial is largely based on Dr. Emed's report.

102. In the Denial, LINA inaccurately identifies Mr. Young's Regular Occupation as Medium – It is Heavy, in part, because it requires the ability to lift up to 75 pounds.

103. Mr. Young cannot perform the material duties of his Regular Occupation or Any Occupation and therefore comes within the definition of Disability under the LTD Plan.

104. Mr. Young exhausted his administrative remedies and timely filed this lawsuit.

**COUNT I**
**(Recovery of LTD Plan Benefits)**
**(Defendants LINA and the LTD Plan)**

105. All other paragraphs are incorporated by reference.

106. The LTD Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002. Defendants are the LTD Plan, Plan administrators, or Plan fiduciaries of the LTD Plan under ERISA.

107. The LTD Plan represents LTD coverage and a promise to provide LTD benefits until Mr. Young is no longer Disabled under the terms of the LTD Plan.

108. Mr. Young continues to be Disabled. He is unable to perform the material and substantial duties of any occupation for which he is qualified by training, education, or experience and provides 80% or more of his Indexed Earnings.

109. Mr. Young has claimed the benefits under the LTD Plan to which he is entitled.

110. Mr. Young reasonably expected that his medical condition met the requirements of Disability as defined by the LTD Plan, and that he would receive benefits under the LTD Plan until he reaches his Social Security Normal Retirement Age or until he was no longer disabled.

111. Despite the coverage of Mr. Young's Disability, LINA improperly terminated his LTD benefits in breach of the LTD Plan and ERISA.

112. LINA's collective conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

113. Even if the Committee properly delegated discretionary authority to LINA, in light of LINA's wholesale and flagrant procedural violations of ERISA, Mr. Young should be entitled to *de novo* review. *See Halo v. Yale Health Plan,* 819 F.3d 42, 60-61 (2d Cir. 2016) ("when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent and harmless.")

114. Instead of evaluating a participant's eligibility based on the applicable plan language and medical evidence, Mr. Young is informed and believes that LINA makes claims decisions based on the claims resources and financial risk it faces on certain claims.

115. LINA wrongfully denied Mr. Young's disability benefits without providing a coherent explanation for its denials, and in a way that conflicts with the plain language of the LTD Plan, violating 29 U.S.C. §§ 1109, 1132.

116. LINA did not properly consider all of the available evidence when terminating Mr. Young's benefits.

117. LINA failed to conduct a full and fair review.

118. LINA blatantly misstated medical evidence for its own financial benefit, *e.g.,* it overstated and excessively relied on biased medical reviews.

119. LINA relied on findings that constitute "clearly erroneous findings of fact" to deny Mr. Young's benefits.

120. LINA abused its discretion by basing its decision on unreliable and inaccurate information. When confronted with this knowledge, LINA either ignored the inaccuracies or corrected the inaccuracies and created new reasons for denial.

121. Upon information and belief, LINA tainted its medical file reviewers by giving the reviewers inaccurate information regarding Mr. Young, while also failing to provide its reviewers with all of the relevant evidence.

122. Upon information and belief, LINA provided its reviewers and vendors with internal notes and financial information about the claim, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

123. Upon information and belief, LINA did nothing to insulate the appeals reviews from its initial determination and used the same claims managers throughout Mr. Young's administrative appeals process, or at least used employees who were managed by the same person(s) and who were orchestrating the denial according to Claim Discussion directives. *See 29* C.F.R. 2560.503-1(h)(3)(ii), (h)(4) (requires claim fiduciaries to "[p]rovide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual.").

124. LINA routinely emphasizes information that favors a denial of benefits while deemphasizing other information that suggests a contrary conclusion.

-13-

125. LINA, Banner Health, and the Committee unreasonably withheld relevant documents throughout the entire claim and poorly managed the file, which is evidenced, in part, by its repeated failure to provide all relevant documents.

126. LINA, Banner Health, and the Committee's failure to comply with ERISA's disclosure requirements and poor management of the file demonstrate its abuse of discretion and improper claims handling.

127. LINA failed to properly consider the opinions of Mr. Young's treating and examining physicians.

128. In terminating Mr. Young's LTD benefits, LINA completely disregarded evidence that Mr. Young's conditions had not changed or improved.

129. LINA has no evidence that Mr. Young's conditions changed or improved since it determined that he met the definition of Disabled in the LTD Policy.

130. The peer reviewers arbitrarily reached their opinions based on insufficient evidence or investigation.

131. None of LINA's reviewing physicians ever set forth any substantive reasons why Mr. Young's treating doctors' opinions were incorrect.

132. LINA failed to explain why it credited the physician reviewers over Mr. Young's treating physicians.

133. The peer reviewers were not given the LTD Plan or other important records for reaching its decision that Mr. Young could perform work.

134. LINA engaged in other procedural irregularities, which it did to serve its own financial best interests.

135. On information and belief, LINA engaged in claim discussions to decide the directions of appeals without having reviewed all of the medical evidence, demonstrating its predetermined path of terminating benefits.

136. LINA intentionally gathered evidence to stack the deck in its favor and against Mr. Young.

137. Mr. Young alleges upon information and belief that LINA has a parsimonious claims handling history.

138. LINA failed to conduct a "meaningful dialogue" regarding Mr. Young's claim.

139. Under the *de novo* standard of review, Mr. Young need only prove by a preponderance of the evidence that he is disabled to be entitled to benefits.

140. Even under the abuse of discretion standard of review, LINA abused its discretion, because its decision terminating Mr. Young's disability benefits was arbitrary and capricious and was caused or influenced by LINA, its reviewing physicians, and its vendors' financial conflicts of interest. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

141. Mr. Young is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the claims handling process and also regarding the effects of LINA's reviewing physicians', its employees', and its vendors' financial conflicts of interest, biases, and motivations on the decision terminating Mr. Young's LTD claim.

142. Under the *de novo* standard of review, Mr. Young is entitled to discovery regarding, among other things, the credibility of LINA's medical reviews and LINA's lack of partiality due to its financial conflicts of interest. *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (under the *de novo* standard of review, new evidence may be admitted regarding, among other things: "the credibility of medical experts… [and] instances where the payor and the administrator are the same entity and the court is concerned about impartiality" (*quoting Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993))).

143. Pursuant to the coverage provided in the LTD Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Mr. Young is entitled to recover all benefits due under the terms of the LTD Plan, and to enforce his rights under the LTD Plan.

144. Mr. Young is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of his disability benefits. He is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated.

145. Pursuant to 29 U.S.C. § 1132(g), Mr. Young is entitled to recover his attorneys' fees and costs incurred herein from LINA.

146. Mr. Young is entitled to prejudgment interest on the benefits to which he is entitled and on his damages at the highest legal rate until paid.

## COUNT II
### (Breach of Fiduciary Duty)
### (LINA, Banner Health, and the Committee)

147. All other paragraphs are incorporated by reference.

148. Under 29 U.S.C. § 1132(a)(3), this Court may enjoin any act or practice that violates ERISA or the terms of the LTD Plan, as well as grant other appropriate equitable relief, provided that such relief is not recoverable under 29 U.S.C. § 1132(a)(1)(B).

149. LINA is a fiduciary and owes fiduciary duties to LTD Plan participants, including Mr. Young.

150. Banner Health is a fiduciary and owes fiduciary duties to LTD Plan participants, including Mr. Young.

151. The Committee is a fiduciary and owes fiduciary duties to LTD Plan participants, including Mr. Young.

152. Under 29 U.S.C. § 1104(a), LINA, Banner Health, and the Committee are required to discharge their duties with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a).

153. Under ERISA, which is founded in trust principles, LINA, Banner Health, and the Committee are required to administer claims in the *best interests* of beneficiaries and participants as part of its fiduciary duty.

-16-

154. In multiple ways throughout the administration of Mr. Young's claim, LINA, Banner Health, and the Committee breached their fiduciary duties pursuant to 29 U.S.C. § 1132(a)(3).

155. LINA's arbitrary and capricious claims handling generally constitutes a breach of fiduciary duty, because LINA's claims handling was discharged imprudently and caused Mr. Young harm that cannot be recovered under 29 U.S.C. § 1132(a)(1)(B).

156. LINA's actions have caused Mr. Young serious harm.

157. Moreover, Mr. Young now owes significant attorneys' fees because of LINA's breaching conduct.

158. By unreasonably denying Mr. Young's benefits, LINA breached its fiduciary duties. To the extent that LINA's denial of benefits caused Mr. Young harm unrecoverable under 29 U.S.C. § 1132(a)(1)(B), then that harm is recoverable under 29 U.S.C. § 1132(a)(3).

159. On information and belief, LINA instructs and/or incentivizes certain employee(s) to terminate fully insured LTD claims and appeals based on bias or its financial interests.

160. Mr. Young is informed and believes that LINA's employees are trained in administering claims in the best interests of LINA, not LTD Plan participants. LINA demonstrated bias and malice against Mr. Young through its employees. Instead of fully and fairly reviewing the medical evidence, LINA unreasonably denied Mr. Young's claim based on unreliable evidence.

161. LINA's failure to act prudently and in the best interests of Mr. Young is a breach of fiduciary duty requiring appropriate equitable relief following discovery of LINA's conduct as it relates to Mr. Young's claim.

162. Mr. Young is informed and believes that LINA has targeted claims under the LTD Plan, including Mr. Young's, which is a breach of fiduciary duty.

163. On information and belief, LINA breached its fiduciary duty to Mr. Young by terminating his claim in an effort to avoid its financial liability.

164. Banner Health and the Committee breached its fiduciary duties by failing to have or provide an SPD, failing to monitor the CEO, the BPA, Vice Presidents, or LINA to insure they performed their duties under the LTD Plan, and failing to take prudent or appropriate corrective action.

165. Based on the facts of this case, Mr. Young has "other equitable relief" available to him in several forms, including but not limited to surcharge,[2] because the relief available under 29 U.S.C. § 1132(a)(1)(B) does not make Mr. Young whole for his losses from LINA, Banner Health, and the Committee's breaching conduct.

166. The Court has broad discretion to fashion appropriate relief to make Mr. Young whole and should mold the relief necessary to protect the rights of the participants.

167. Mr. Young is entitled to injunctive or mandamus relief under 29 U.S.C. § 1132(a)(3).

168. He is entitled to enjoin any act or practice by LINA, Banner Health, and the Committee that violates ERISA or the LTD Plan, or seek other appropriate equitable relief that is traditionally available in equity.

169. LINA was unjustly enriched as a result of its breach of fiduciary duty violations, because it wrongfully withheld Mr. Young's benefits for its own profit.

170. LINA engaged in several procedural violations in an attempt to circumvent its obligations under ERISA, and these violations are by definition under 29 U.S.C. § 1132(a)(3) conduct that can be enjoined by this Court.

171. Banner Health and the Committee failed to perform its fiduciary duties under ERISA and the Plan.

172. LINA acted with malice and in bad faith against Mr. Young, which constitutes a violation of its fiduciary obligations.

---

[2] A surcharge is a kind of equitable monetary remedy against a trustee, which puts the beneficiary in the position he would have attained but for the trustee's breach. Surcharge extends to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.

173. ERISA "does not elsewhere adequately remedy" the injuries caused to Mr. Young by LINA, Banner Health, and the Committee's breach of fiduciary duty violations.

174. As a direct and proximate result of the breaches of fiduciary duty, Mr. Young suffered actual, *significant* financial harm and has incurred financial expense.

175. Mr. Young is entitled to prejudgment interest on the benefits to which he is entitled and on his damages at the highest legal rate until paid in full.

176. Pursuant to 29 U.S.C. § 1132(g), Mr. Young is entitled to recover his attorneys' fees and costs incurred herein from LINA.

**WHEREFORE**, on all claims, Mr. Young prays for entry of judgment against Defendants as set forth in this Complaint, which includes:

A. All past LTD benefits under the terms of the LTD Plan;

B. Clarifying and determining Mr. Young's rights to future benefits under the terms of the LTD Plan;

C. For any other benefits Mr. Young may be entitled to receive under the LTD Plan due to his disability;

D. All other equitable relief that is proper as a result of LINA, Banner Health, and the Committee's breaches of fiduciary duties;

E. An award of Mr. Young's attorneys' fees and costs incurred herein;

F. An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

G. For such and further relief as the Court deems just, equitable, and reasonable.

Dated this 26th day of January 2017.

                OBER & PEKAS, PLLC

                By: *s/ Kevin Koelbel*
                    Erin Rose Ronstadt
                    Kevin Koelbel
                    Attorneys for Plaintiff

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745